**Dated: January 03, 2006**
**The following is ORDERED:**



                           Tom R. Cornish
            UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **JACK CARREL LADD** | ) | Case No. 04-73669 |
| d/b/a **WILLIAMSON MOTORS** | ) | Chapter 7 |
| **KETURAH ANN LADD** | ) | |
| a/k/a **KETURAH BOWEN-LADD** | ) | |
| a/k/a **KETURAH BOWEN** | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |
| **SECURITY STATE BANK OF** | ) | |
| **WEWOKA, OKLAHOMA an** | ) | |
| **Oklahoma banking corporation** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 05-7006 |
| | ) | |
| **JACK CARREL LADD and** | ) | |
| **KETURAH ANN LADD** | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

On the 30th day of November, 2005, the above-referenced adversary came on for trial. Appearances were entered by Jack Mattingly, Sr., Attorney for Plaintiff, and Jerry Colclazier, Attorney for Defendants. After the presentation of testimony and evidence, Defendants' counsel moved for a directed verdict in favor of Keturah Ladd, which this Court sustained. An Order to that effect was entered December 2, 2005. Parties were instructed at trial to file any additional arguments and legal authorities on or before December 9, 2005. Plaintiff submitted a Brief on December 9, 2005. After reviewing the evidence and testimony, this Court hereby enters its findings and conclusions in conformity with Fed. R. Bankr. P. 7052, in this core proceeding.

Plaintiff commenced this adversary proceeding on January 7, 2005, objecting to Defendants' discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and objecting to the discharge of the debt owed to Plaintiff pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B). Plaintiff alleges in the complaint that Defendants sold certain cattle in which Plaintiff had a security interest without paying the proceeds to Plaintiff. Plaintiff also alleges that Defendants submitted false financial statements to Plaintiff and obtained funds by false pretenses, false representation or actual fraud in the form of the loans received.

Defendants allege that the proceeds were utilized to make payments on the promissory notes and that the financial statements were changed after Mr. Ladd signed them. Defendants also allege that they were uncertain as to the existence and import of the security interest and had no intention of harming or defrauding Plaintiff. Defendants further allege that Plaintiff was aware of the loss of collateral and did not object.

The parties stipulated to the following facts, as provided in the Pre-Trial Order entered December 2, 2005:

2

1. Defendants admit the execution of promissory notes dated January 8, 2002, December 31, 2002, and December 31, 2002.

2. Defendants admit execution of financial statements dated October 30, 2000, January 2, 2002, May 1, 2002, and December 30, 2002, except the Debtors allege the bank must have changed a financial statement to make it appear that Debtor had listed assets, including the cattle, which were not listed on the financial statement he signed.

3. Defendants admit signing a letter to Plaintiff by Jack Ladd dated December 31, 2003.

The Court heard the testimony of Mr. Larry Dalvine. Mr. Dalvine is currently the President of First National Bank in Chelsea, Oklahoma, and has been at that Bank approximately one year. Prior to working in Chelsea, Mr. Dalvine was President of Security State Bank of Wewoka, Oklahoma, for approximately three years. Mr. Dalvine testified at trial as to the promissory notes and security agreements at issue, and provided the following figures:

|  | Original Amount of Note | Approximate Balance Owing As of 11/22/2005 |
|---|---|---|
| 01/08/2002 | $ 43,281.53 | $34,907.15, with accrued interest of $5,724.89 |
| 12/31/2002 | $ 31,360.37 | $28,265.70, with accrued interest of $2,549.33 |
| 12/31/2002 | $125,127.00 | $16,446.56, with accrued interest of $2,858.85 |

The note dated January 8, 2002, listed as security farm products and livestock. The December 31, 2002,

3

note with an original loan amount of $31,360.37 was secured by real estate. The last note is a line of credit for a floor plan for the Debtor's used car business.

Mr. Dalvine also testified as to financial statements in general and as to the four financial statements at issue, which were signed only by Mr. Ladd ("Debtor"). There are several discrepancies in the financial statements, including misstatements regarding the assets of the Debtor, bank accounts and balances and there are also mathematical errors contained in the statements. Mr. Dalvine stated that the financial statements are required and are used when making lending decisions. He stated that the statements are used to identify the financial strength of an individual, and that Plaintiff makes loans based in part on the truth and accuracy of the financial statements, but also testified that the financial statements are not heavily relied upon. Tax returns and credit reports are also examined, and an evaluation is made on the collateral that is offered. Mr. Dalvine could not guarantee that Plaintiff would not have made the loans at issue to the Debtor if it were known that the statements were not accurate. Mr. Dalvine stated that loan officers go over financial statements with customers, but conceded that there appeared to be a lack of diligence in going over some of the Debtor's financial statements, even stating that one of the financial statements falls short of being reliable.

This Court is particularly concerned with the financial statement dated January 2, 2002. The financial statement contains the handwriting of two different people and there are areas that appear to have been "whited-out" and written over. Debtor alleges the writing that is not his own was added after his signature, as was the white-out portions. Debtor testified at trial that he did not receive assistance from loan officers when completing his financial statements, and that the accuracy of the statements was not questioned when he completed them. Debtor stated that he had no intention of misleading the Plaintiff.

4

Debtor sent a handwritten letter to Plaintiff dated December 31, 2003, regarding the cattle and Plantiff's future inspection of the cattle. The letter provides in part as follows:

> I do not have any cattle to inspect at this time.
> I only had 28 head at the beginning of January 2003. I started disbursing them in June, August, Sept. and the last in November.
> I had lost a calf crop from having an old bull that I replaced later on.
> My cows were getting old and I thought it best to rid of them.
> I had some unexpected hardship this past year and did not get a chance to replace them.
> I regret any problems this may cause, but the payment of $650.00/mo will be paid as agreed. And the cattle will be replaced as time and funds permit.

Plaintiff's Ex. 21. Debtor stated at trial that he sent this letter because he knew at that time that Plaintiff was going to perform a cattle inspection soon. Debtor contends that he was simply advising Plaintiff what had occurred. Debtor further contends that part of the proceeds from selling the cattle went towards paying the loans with Plaintiff.

The promissory note dated January 8, 2002, which was secured by farm products and livestock, contains a clause titled, "OWNERSHIP AND DUTIES TOWARD PROPERTY." This clause provides that the signatories will protect Plaintiff's interest in its collateral, and further provides as follows:

> I will keep the Property in my possession (except if pledged and delivered to you). I will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless we agree otherwise in writing.
> I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the Property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.

Plaintiff's Ex. 8, page 3. Debtor stated at trial that he did not think he needed Plaintiff's permission to sell or dispose of his cattle. Debtor, however, signed or initialed every page in the promissory note, agreeing to the terms set out in the note.

5

Section 523(a) provides, in part:

(a) A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt -
\*\*\*
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
(B) use of a statement in writing -
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(A) and (B). Exceptions to discharge are generally narrowly construed, with any doubt being resolved in favor of the debtor. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir. 1997). The Plaintiff has the burden to prove each element of the claim by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991).

To prevail under § 523(a)(2)(A), the Plaintiff must prove that the Debtor made a false representation with the intent to deceive the Plaintiff; that the Plaintiff reasonably relied on the misrepresentation; and the misrepresentation caused the Plaintiff to sustain a loss. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996). Courts may examine the totality of the circumstances to infer a debtor's intent to deceive a creditor. *Id.* at 1375.

To prevail under § 523(a)(2)(B), Plaintiff must prove that Debtor made a written statement containing materially false information regarding their financial situation, Plaintiff justifiably relied on the false

6

information, and that the Debtor gave the information with the intent to deceive. *See, Field v. Mans,* 516 U.S. 59 (1995) (fraud exception requires justifiable reliance rather than reasonable reliance).

This Court finds that Plaintiff did not rely on the financial statements completed by the Debtor, nor did Plaintiff rely on the representations made in the financial statements. Even if Plaintiff did rely on the financial statements and/or the representations contained in them, that reliance was not reasonable or justifiable. There were several inconsistencies in the financial statements, including errors regarding the amounts Debtor held in accounts with the Plaintiff. Plaintiff did not verify or investigate any of the information contained in the financial statements, and failed to take any steps to correct the financial statements, despite some glaring errors. Furthermore, Debtor's wife did not even sign the financial statements. Accordingly, any reliance on the financial statements, if any, was unreasonable. Therefore, Plaintiff's arguments under § 523(a)(2)(A) and (B) fail.

Plaintiff objects to Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A). Section 727(a)(2)(A) provides as follows:

(a) The court shall grant the debtor a discharge, unless -

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-
>
>> (A) property of the debtor, within one year before the date of the filing of the petition;

11 U.S.C. § 727(a)(2)(A). The burden of proof is on the Plaintiff to prove denial of the Debtor's discharge by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *see Grogan,* 498 U.S. 279. To prevail, the Plaintiff must show:

7

> (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor.

*Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1293 (10th Cir. 1997). The provisions denying discharge "must be construed liberally in favor of the debtor and strictly against the creditor." *Id.* at 1292.

The first three elements are met here. The Debtor transferred his remaining cattle from June to November of 2003. Debtor and his wife filed for relief under Chapter 7 of the Bankruptcy Code on September 27, 2004. It is clear that a portion of the transfers were made within one year prior to the bankruptcy. This Court must determine whether Debtor transferred the cattle with the intent to hinder, delay, or defraud a creditor.

Plaintiff must demonstrate actual fraudulent intent; the intent to defraud cannot be constructive. *Village of San Jose v. McWilliams,* 284 F.3d 785, 790 (7th Cir. 2002). Fraudulent intent may be inferred by circumstantial evidence or from the debtor's course of conduct. *See Farmer's Co-op Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982) (citation omitted). Courts have looked to certain "badges of fraud" that may indicate fraud; the Court of Appeals for the Second Circuit has provided the following list of "badges of fraud":

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582-83 (2d Cir. 1983). The court in *Kaiser* notes

Case 05-07006   Doc 38   Filed 01/04/06   Entered 01/04/06 08:25:28   Desc Main
Document      Page 8 of 10

other circumstances from which courts have inferred intent to defraud, which are: concealment of facts and false pretenses by the debtor, reservation of rights in the transferred property, secreting the proceeds of the transfer after receipt, unconscionable discrepancy between value and consideration, and the creation by an oppressed debtor of a closely-held corporation to receive the transfer of property. *Id.* at 1582.

The Court of Appeals for the Ninth Circuit has listed the "badges of fraud" as follows:

(1) a close relationship between the transferor and the transferee;
(2) that the transfer was in anticipation of a pending suit;
(3) that the transferor Debtor was insolvent or in poor financial condition at the time;
(4) that all or substantially all of the Debtor's property was transferred;
(5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and
(6) that the Debtor received inadequate consideration for the transfer.

*Emmett Valley Associates v. Woodfield (In re Woodfield),* 978 F.2d 516, 518 (9th Cir. 1992).

In studying the "badges of fraud" and the circumstances in the present case, this Court cannot find that Debtor acted with the intent to hinder, delay or defraud creditors. There was no evidence presented that Debtor transferred the cattle for little or no consideration, nor was there evidence that the transfer was made to a family member or close friend or a corporation created by Debtor. There was no evidence that Debtor retained any interest or benefit in the cattle following the transfers. Further, the letter written by Debtor in December of 2003, indicates that Debtor was not trying to hide or conceal his actions from his creditors, rather he was actually disclosing the transfers to the Plaintiff. Debtor testified that he used the proceeds from the transfers to pay his creditors, including Plaintiff. The only circumstances present in this case that possibly indicate fraudulent intent are Debtor's poor financial condition at the time of the transfers, and the fact that all of the cattle was transferred. These factors do not rise to the level of an intent to hinder, delay, or defraud creditors. Debtor stated in his letter that he intended to replace the cattle as time and

9

funds permitted. All the factors present in this case indicate that Debtor intended to pay his creditors and did not have the intent to hinder, delay, or defraud creditors.

IT IS THEREFORE ORDERED that judgment is entered for Defendant against the Plaintiff in that the debt owed to Plaintiff is **dischargeable.**

IT IS FURTHER ORDERED that judgment is entered for Defendant against the Plaintiff in that the Debtor/Defendant's discharge is **granted.**

***

10